# EXHIBIT 7

***LM Insurance Corporation, et al. v. PARS Medical P.C., et al.***

**Exhibit 7**

**DOI Opinion Letters**

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

The office of General Counsel issued the following informal opinion on February 21, 2001, representing the position of the New York State Insurance Department.

## Re: No-fault benefits; PC billing for services rendered by independent contractor providers

**Question Presented:**

May a professional service corporation ("PC") which renders health services through its owners and employees or through independent contractors, each of whom is appropriately licensed to provide the service in question, be considered a "licensed provider" under Regulation 68, N.Y. Comp. R. & Regs., tit. 11, □65.15(j) (2000) entitled to reimbursement under the New York Comprehensive Motor Vehicle Insurance Reparations Act (No-Fault Law), New York Insurance Law Article 51 (McKinney 2000),?

**Conclusion:**

(a) Where the owner(s) of a PC is licensed to perform health services and such service are performed by a PC owner or an employee under the supervision of a PC owner, the services may be billed for under No-Fault by the PC as the licensed provider of those services.

(b) Where the health services are performed by a provider who is an independent contractor with the PC and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services.

**Analysis:**

The No-Fault Law includes within the benefits that are to be provided as part of basic economic loss payment for necessary medical services. New York Insurance Law □5102(a)(1) (McKinney 2000). In order to effectuate the requirements of the No-Fault Law, the Superintendent of Insurance has promulgated Regulation 68, which provides:

> An insurer shall pay benefits for any element of loss, other than death benefits, directly to the applicant or, when appropriate, to the applicant's parent or legal guardian or to any person legally responsible for necessities, or, upon assignment by the applicant or any of the aforementioned persons, shall pay the providers of health care services or the applicant's employer directly. Death benefits shall be paid to the estate of the eligible injured person. (emphasis added) N.Y. Comp. R. & Regs., tit. 11, □65.15(j).

New York Business Corporation Law Article 15 (McKinney 2000) authorizes the incorporation of Professional Service Corporations. New York Business Corporation Law □1504 (McKinney 2000) provides, in pertinent part:

> (a) No professional service corporation may render professional services except through individuals authorized by law to render such professional services as individuals.

New York Business Corporation Law □1507 (McKinney 2000) restricts issuance of shares in a professional service corporation to individuals licensed to practice the profession and New York Business Corporation Law □1511 (McKinney 2000) similarly restricts transfer of shares in the corporation.

New York Business Corporation Law □1515 (McKinney 2000) provides that the regulation of, inter alia, the health professions shall be in accordance with the Education Law. New York Education Law □6509-a (McKinney 2000), which denominates fee sharing as unprofessional conduct, provides, inter alia, that the prohibition shall not be deemed to prohibit a professional service corporation from receiving or sharing in the fees earned by its shareholders and employees.

It is therefore clear that a PC could financially benefit from the services of its owners and employees in the authorized treatment of No-Fault patients. Accordingly, such a corporation could be considered a "licensed provider" within the purview of Insurance Department Regulation 68 eligible for reimbursement for health services provided.

As to independent contractors, I surmise the term is used as it is usually construed in New York:

> One who, in exercising an independent employment, contracts to do certain work according to his or her own methods, and without being subject to the control of the employer … ., G.D. Searle & Co. v. Medicore Communications, Inc., 843 Fed Supp. 893 (S.D.N.Y.1994)

Because of the lack of control, the principal is not usually held liable for the negligence of the independent contractor. Beck v. Woodward Affiliates, 226 App. Div. 2d 328, 640 N.Y.S. 2d 205 (2d Dept. 1996).

This Department has noticed that increasingly PCs are billing for No-Fault services provided through independent contractors. Such direct billing by the PC, due to the lack of supervisory control by the PC, may facilitate fraud, since the PC might bill under its own fee schedule as a specialist rather than the general practitioner fee schedule of the independent contractor, who actually provided the service. In addition, the patient may wrongfully believe the independent contractor's actions are under the supervision of the PC.

Since New York Education Law □6509-a specifically authorizes shareholders and employees to contribute to the income of a PC, and is separate with respect to independent contractors, allowing the PC to bill for the independent contractor may constitute unlawful fee splitting. This is, of course, a determination to be made by the Education Department.

Accordingly, since the control, and therefore the liability, of the principal for the acts of the independent contractor is attenuated, and in order to preserve the integrity of the No-Fault and physician licensing systems, this Department has determined that, when the services are provided by an independent contractor, the PC should not be considered as the "licensed provider" authorized to bill under No-Fault.

This letter is limited to an interpretation of the Insurance Law and is not intended as an interpretation of any other statute, such as the Education Law, which is within the jurisdiction of other agencies.

For further information you may contact Principal Attorney Alan Rachlin at the New York City Office.

***LM Insurance Corporation, et al. v. PARS Medical P.C., et al.***

**Exhibit 7**

**DOI Opinion Letters**

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

The Office of General Counsel issued the following informal opinion on February 5, 2002, representing the position of the New York State Insurance Department.

**No-Fault Billings, Independent Contractors**

**Issue**

Based upon the information furnished by Medical Society A, will the Insurance Department modify the conclusion expressed in its February 21, 2001 letter?

**Conclusion**

No reason has been provided for this Department to modify the conclusion expressed therein.

**Facts**

By letter of February 21, 2001, this Department determined that when services are provided by an independent contractor, a Professional Corporation (PC) is not entitled to receive reimbursement from an insurer under the New York Comprehensive Motor Vehicle Insurance Reparations Act (No-Fault Law), New York Insurance Law Article 51 (McKinney 2000), in accordance with N.Y. Comp. R. & Regs. tit. 11, □ 6515(j) (2001) (Regulation 68).

Medical Society A indicated it had received a complaint from a physician member that an insurer had relied on the February 21, 2001 opinion to deny payment for services rendered to a patient entitled to reimbursement under the No-Fault statute and gave two reasons why it believed the determination to be in error.

**Analysis**

In the February 21, 2001 letter, based upon the adoption by this Department for No-Fault medical payments of the Medical Fee Schedule established by the New York State Worker's Compensation Board (Board), N.Y. Comp. R. & Regs. tit. 11, Part 68, Appendix 17-A (2001), it was indicated:

> This Department has noticed that increasingly PCs are billing for No-Fault services provided through independent contractors. Such direct billing by the PC, due to the lack of supervisory control by the PC, may facilitate fraud, since the PC might bill under its own fee schedule as a specialist rather than the general practitioner fee schedule of the independent contractor, who actually provided the service. In addition, the patient may wrongfully believe the independent contractor's actions are under the supervision of the PC.

Medical Society A correctly notes that since 1996 the medical fee schedule of the Board has not differentiated between specialists and general practitioners. Accordingly, the example expressed in the second quoted sentence is no longer valid. This, however, does not detract from the conclusion that the lack of supervisory control by the PC could lead to fraud on the insurer and a misapprehension on the part of the patient.

Medical Society A further asserts that

> Many health plans, including Medicare, recognize the business relationship between independent contractors and PCs. The contract between the two would constitute an employer/employee relationship and would therefore contain accountability.

First, in the February 21, 2001 opinion, it was indicated that an indicia of an independent contractor is the lack of control by the employer and that, because of such lack of control, the principal is not usually held liable for the acts of the independent contractor.

Second, the United States Department of Health and Human Services has promulgated a regulation regarding assignment of Medicare benefits, 42 C.F.R. □ 424.73 (2001):

> Prohibition of assignment of claims by providers. (a) Basic prohibition. Except as specified in paragraph (b) of this section, Medicare does not pay amounts that are due a provider to any other person under assignment, or power of attorney, or any other direct payment arrangement.

Payment to an independent contractor is not encompassed within any of the exceptions listed in 42 C.F.R. □ 424.73(b). A similar prohibition regarding Medicaid is found in 42 C.F.R. □ 447.10 (2001).

An extract from the Carrier's Manual issued by the Health Care Finance Administration[1] provides:

> Except as provided in B below, the carrier may pay assigned benefits only to the physician or other supplier who furnished the service and may not pay assigned benefits to any other person or organization under a reassignment or power of attorney or under any other arrangement where the other person or organization receives the payment directly.
>
> Among the exceptions are:
>
> The Medicare program may pay the employer of the physician or other supplier if the physician or other supplier is required, as a condition of his employment, to turn over to his employer the fees for his services.

While the Carrier's Manual does mention payment to an independent contractor, it is in the context of the independent contractor performing services for a PC and receiving compensation on his own account. That provision may not be read to authorize the reverse, the PC receiving payment for the independent contractor's services.

Accordingly, for the reasons mentioned above, this Department does not believe it necessary to modify the conclusion expressed in the February 21, 2001 opinion.

For further information you may contact Principal Attorney Alan Rachlin at the New York City Office.

---

1 This organization is currently known as the Center for Medicare and Medicaid Services.

***LM Insurance Corporation, et al. v. PARS Medical P.C., et al.***

**Exhibit 7**

**DOI Opinion Letters**

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

The Office of General Counsel issued the following informal opinion on March 11, 2002, representing the position of the New York State Insurance Department.

**Re: No-fault fees; Independent Contractor/Professional Corp.**

**Question Presented**:

May a physician, who is an independent contractor associated with a medical professional corporation ("PC"), sign a claim form which is submitted by the PC to a No-Fault insurer for benefits while such physician is representing himself or herself as the attending physician of the injured person being treated, in order for the PC to receive reimbursement for health services rendered under the No-Fault system in New York?

**Conclusion**:

No. If the physician has contracted with the PC as an independent contractor, and is not an employee or shareholder of the PC, such physician may not represent himself or herself as an employee of the PC eligible to bill for health services rendered on behalf of the PC, under the New York Comprehensive Motor Vehicle Insurance Reparations Act ("No – Fault" law), N. Y. Ins. Law Art. 51 (McKinney 2000), in accordance with N.Y. Comp. R. & Regs. tit. 11, □ 65.15(j) (2001) (Regulation 68).

**Facts**:

Attorney A represents a New York governmental entity involved in determining whether a physician has committed professional misconduct concerning billings under No-Fault. An internist, who had contracted with a PC as an independent contractor, ordered physical therapy services for a patient injured in an automobile accident, such services to be performed by a physical therapist employed by the PC. The internist signed the report as the attending physician for physical therapy services rendered by the PC, between May 20 and July 31, 1999. The PC included the report in its claim submission to the No-Fault insurer, billing under its corporate name. The internist is neither an officer nor shareholder of the PC, nor an employee of the PC.

**Analysis**:

The Department's analysis is based upon the specific facts as Attorney A has presented them, which states that the internist has entered into a contract with the PC to provide health services to patients and is deemed to be an independent contractor of the PC under the contract.

New York Business Corporation Law Article 15 (McKinney 2000) authorizes the incorporation of Professional Service Corporations. New York Business Corporation Law □ 1504(a) (McKinney 2000) provides in pertinent part that "[n]o professional service corporation may render professional services except through individuals authorized by law to render such professional services as individuals."

New York Business Corporation Law □ 1507 (McKinney 2000) restricts issuance of shares in a professional service corporation to individuals licensed to practice the profession and New York Business Corporation Law □ 1511 (McKinney 2000) similarly restricts transfer of shares in the corporation. Therefore, medical PCs must be owned by licensed medical providers and services must be performed by licensed medical providers.

New York Business Corporation Law □ 1515 (McKinney 2000) provides that the regulation of, inter alia, the health

professions shall be in accordance with the Education Law. New York Education Law □ 6509-a (McKinney 2000), which denominates fee sharing as unprofessional conduct, provides, inter alia, that the prohibition shall not be deemed to prohibit a professional service corporation from receiving or sharing in the fees earned by its shareholders and employees.

Therefore, a PC may bill for medical services rendered by the owner(s) of the PC and licensed employees of the PC under the supervision of the physician owner(s). A medical PC would be considered a "licensed provider" within the purview of Insurance Department Regulation 68 eligible for reimbursement for health services provided.

> An insurer shall pay benefits for any element of loss, other than death benefits, directly to the applicant or, when appropriate, to the applicant's parent or legal guardian or to any person legally responsible for necessities, or, upon assignment by the applicant or any of the aforementioned persons, shall pay the providers of services or the applicant's employer directly. Death benefits shall be paid to the estate of the eligible injured person. (Emphasis added).

N. Y. Comp. R. & Regs., tit. 11, □ 65.15(j) (2001) (Regulation 68).

An independent contractor is construed to be "[o]ne who, in exercising an independent employment, contracts to do certain work according to his or her own methods, and without being subject to the control of the employer. . . ." G.D. Searle & Co. v. Medicore Communications, Inc., 843 Fed Supp. 893 (S.D.N.Y. 1994).

Because of the lack of control, the principal is not usually held liable for the negligence of the independent contractor. Beck v. Woodward Affiliates, 226 App. Div. 2d 328, 640 N.Y.S. 2d 205 (2d Dept. 1996).

Therefore, the physician performing services as an independent contractor affiliated with the PC is limited to billing in his or her own name. When services are provided by an independent contractor affiliated with a PC, the PC is not entitled to receive reimbursement under the No-Fault law since it is not deemed to be the licensed provider of those services.

If the PC wished to modify its contractual arrangement with the independent contractor into a traditional employer-employee relationship, the internist may then sign reports in bill submissions for reimbursement on behalf of the PC. Otherwise, the PC and internist are bound by their legal arrangement established under the contract entered into and are required to honor it accordingly.

For further information you may contact Associate Attorney Jeffrey A. Stonehill at the New York City Office.

*LM Insurance Corporation, et al. v. PARS Medical P.C., et al.*

**Exhibit 7**

**DOI Opinion Letters**

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

George E. Pataki
Governor

Gregory V. Serio
Superintendent

The Office of General Counsel issued the following opinion on October 29, 2003, representing the position of the New York State Insurance Department.

**RE: No-Fault Billing for Services Provided at Hospitals by Independent Contractors**

**QUESTION PRESENTED:**

May a hospital bill for and receive No-Fault benefits for health services provided to a patient on a hospital's premises, when the treating health providers are not employees of the hospital, but contract with the hospital as independent contractors in order to provide services on the hospital premises, such as in an emergency room?

**CONCLUSION:**

No. Only the treating provider of health services may bill for and receive No-Fault benefits for services provided to a patient when the provider is an independent contractor of the hospital.

**FACTS PRESENTED:**

A person injured in an automobile accident is treated in a hospital emergency room by a neurosurgeon or orthopedist. In the situation described, neither health provider is employed by the hospital but has contracted with the hospital to perform services on hospital premises as an independent contractor of the hospital. The hospital wishes to bill the No-Fault insurer for the services performed as the named provider of services and to receive benefits directly from the insurer.

**ANALYSIS:**

Pursuant to N.Y. Comp. Codes R. & Regs. tit 11 □ 65-3.11(a)(2003), with respect to direct payments, "An insurer shall pay benefits for any element of loss, other than death benefits, directly to the applicant…or, upon assignment by the applicant…shall pay benefits directly to providers of health care services….".

Under this provision, a hospital may bill for medical services rendered by properly licensed employees of the hospital. The same is not true for licensed health providers who treat patients on the premises of the hospital as independent contractors of the hospital. An independent contractor is construed to be "[o}ne who, in exercising an independent employment, contracts to do certain work according to his or her own methods, and without being subject to the control of the employer..". G.D. Serle & Co. v. Medicore Communications, Inc. 843 Fed. Supp. 893 (S.D.N.Y. 1994). Therefore, a health care provider performing health services as an independent contractor affiliated with the hospital is limited to billing for those services in his or her name.

When such services are provided by an independent contractor affiliated with a hospital, the hospital is not entitled to receive reimbursement under the No-Fault law since it is not deemed to be the licensed provider of those services. The hospital may, however, bill the insurer on behalf of the independent contractor as an administrative convenience, so long as the billing is done on behalf and in the name of the independent contractors performing services on the hospital premises.

For further information you may contact Supervising Attorney Lawrence M. Fuchsberg at the New York City Office.

**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

George E. Pataki
Governor

Howard Mills
Acting Superintendent

The Office of General Counsel issued the following opinion on March 21, 2005, representing the position of the New York State Insurance Department.

**Re: Payment for Physician Independent Contractors, No-Fault**

**Inquiry:**

Based upon interpretations of the Medicare statute, 42 U.S.C.A. □ 1395 et seq (West 1992 and 2003 Supplement), by the Center for Medicare and Medicaid Services (CMS) of the United States Department of Health and Human Services and of the Internal Revenue Code, 26 U.S.C.A. □ 1 et seq. (West 2002 and 2003 Supplement), by the Internal Revenue Service, with relation to independent contractors, will the Insurance Department modify its previous opinions that a Professional Corporation (PC) may not, under the New York Comprehensive Motor Vehicle Insurance Reparations Act (No-Fault Law), New York Insurance Law Article 51 (McKinney 2000), bill for the services of an independent contractor?

**Conclusion:**

The Insurance Department does not believe that the interpretations by the CMS or the Internal Revenue Service compel a modification of its previously expressed position.

**Facts:**

By letter of February 21, 2001, the Insurance Department opined that a PC may not bill for the services of an independent contractor under No-Fault, relying on the potential for fraud because the PC may bill as a specialist rather than as a general practitioner and because the patient may wrongfully believe that the independent contractor's actions are under the supervision of the PC. By letter of February 5, 2002, while acknowledging that under the Medical Fee Schedule adopted by the Chair of the Workers' Compensation Board (which has been adopted for No-Fault by the Insurance Department) there is no different fee schedule for specialists and general practitioners, the Department reiterated the February 2001 position. In the February 2002 opinion, the Department again relied on the lack of control by the PC and added as a reason a regulation, 42 C.F.R. □ 424.73 (2001), promulgated by CMS which prohibited assignments under Medicare.

In support of the inquirer's assertion that the Department should modify its previously expressed position, the inquirer claims that CMS has modified its position on billings by independent contractors and that a status of independent contractors for physicians is mandated by regulations issued pursuant to the Internal Revenue Code.

**Analysis:**

The No-Fault Law includes within the benefits that are to be provided as part of basic economic loss payment for necessary medical services. New York Insurance Law □5102(a)(1) (McKinney 2000). In order to effectuate the requirements of the No-Fault Law, the Superintendent of Insurance has promulgated Regulation 68-C, which provides:

> An insurer shall pay benefits for any element of loss, other than death benefits, directly to the applicant or, when appropriate, to the applicant's parent or legal guardian or to any person legally responsible for necessities, or, upon assignment by the applicant or any of the aforementioned persons, shall pay the providers of health care services as covered under section 5102(a)(1) of the Insurance Law, or the applicant's employer directly. Death benefits shall be paid to the estate of the eligible injured person. (emphasis added) N.Y. Comp. R. & Regs., tit. 11, □65-3.11(a) (2003).

New York Business Corporation Law Article 15 (McKinney 2000) authorizes the incorporation of Professional Service Corporations. New York Business Corporation Law □1504 (McKinney 2000) provides, in pertinent part:

> (a) No professional service corporation may render professional services except through individuals authorized by law to render such professional services as individuals.

New York Business Corporation Law □1507 (McKinney 2003) restricts issuance of shares in a professional service corporation to individuals licensed to practice the profession and New York Business Corporation Law □1511 (McKinney 2000) similarly restricts transfer of shares in the corporation.

New York Business Corporation Law □1515 (McKinney 2003) provides that the regulation of, inter alia, the health professions shall be in accordance with the Education Law. New York Education Law □6509-a (McKinney 2000), which denominates fee sharing as unprofessional conduct, provides, inter alia, that the prohibition shall not be deemed to prohibit a professional service corporation from receiving or sharing in the fees earned by its shareholders and employees.

It is therefore clear that a PC could financially benefit from the services of its owners and employees in the authorized treatment of No-Fault patients. Accordingly, such a corporation could be considered a "licensed provider" within the purview of Insurance Department Regulation 68-C and be eligible for reimbursement for health services it provided.

As to independent contractors, I surmise the term is used as it is usually construed in New York:

> One who, in exercising an independent employment, contracts to do certain work according to his or her own methods, and without being subject to the control of the employer ... ., *G.D. Searle & Co. v. Medicore Communications, Inc.*, 843 Fed Supp. 893 (S.D.N.Y.1994)

Because of the lack of control, the principal is not usually held liable for the negligence of the independent contractor. *Beck v. Woodward Affiliates*, 226 App. Div. 2d 328, 640 N.Y.S. 2d 205 (2d Dept. 1996).

Accordingly, the Department has opined that, when the services are provided by an independent contractor, the PC should not be considered as the "licensed provider" authorized to bill under No-Fault.

As indicated in the Department's February 2002 opinion, the United States Department of Health and Human Services had promulgated a regulation regarding assignment of Medicare benefits, 42 C.F.R. □ 424.73 (2001):

> Prohibition of assignment of claims by providers. (a) Basic prohibition. Except as specified in paragraph (b) of this section, Medicare does not pay amounts that are due a provider to any other person under assignment, or power of attorney, or any other direct payment arrangement.

Payment to an independent contractor is not encompassed within any of the exceptions listed in 42 C.F.R. □ 424.73(b). A similar prohibition regarding Medicaid was found in 42 C.F.R. □ 447.10 (2001) Neither provision has since been modified by CMS.

The inquirer has now furnished an e-mail message from a Clinical Education Coordinator of an insurer that administers Medicare Part B on behalf of CMS to a member of the inquirer's firm indicating:

In response to the inquiry, yes a healthcare provider may bill Medicare directly for the services of a Radiologist PC where the services are the interpretation of medical imagery and where the equipment and facility is owned by the Healthcare Provider PC.

Since the individual who furnished the message is not an attorney, nor is he/she authorized by CMS to make a pronouncement on behalf of the agency, and since the insurer is not authorized to bind CMS, the message has very little probative value.

While CMS has, by regulation, 42 C.F.R. □ 410.26 (2001), authorized a physician or PC to bill for services of an auxiliary professional, such authorization is limited to situations where the supplies or services are included within the physician's or PC's bill. While there is one instance where an independent contractor's services may be billed through a physician or PC, 42 C.F.R. □ 410.150(a)(15) (2001), that authorization is limited to the services of a physicians assistant.

Accordingly, it does not appear that CMS has changed its position.

The inquirer has mischaracterized the position of the Internal Revenue Service vis a vis independent contractors. 26 C.F.R. □□ 31.3121(d)-1(c) (2002), dealing with contributions for Social Security, and 31.3306(i)-1(b), dealing with the Federal Unemployment Tax both provide:

> (c) Common law employees. (1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee. (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. . . . In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.

Further, 26 C.F.R. □ 31.3401(c)-1 (2002), dealing with deductions from the wages of employees, provides:

> (c) Generally, physicians, lawyers, dentists, veterinarians, contractors, subcontractors, public stenographers, auctioneers, and others who follow an independent trade, business, or profession, in which they offer their services to the public, are not employees.
>
> (d) Whether the relationship of employer and employee exists will in doubtful cases be determined upon an examination of the particular facts of each case.
>
> (e) If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such relationship exists, it is of no consequence that the employee is designated as a partner, coadventurer, agent, independent contractor, or the like.

. . .

Reading the above quoted provisions in context, it is clear that the Internal Revenue Service is setting forth general rules dealing with physicians practicing for the public, not relationships between two physicians, and is not

intended to state that physicians are always independent contractors. In fact, the Department is aware of several situations where individual practicing law or medicine within a PC are considered employees, not independent contractors.

Accordingly, no reason has been presented that would compel the Department to modify its previous conclusions. In any event, even if CMS allowed unlimited payment to PCs for the services of Independent Contractors and the Internal Revenue service considered physicians to be independent contractors under all circumstances, such interpretations would not control the Insurance Department's interpretation of the No-Fault statute.

As to health care providers functioning as leased employees and No-Fault, New York Labor Law □ 916(3) (McKinney 2005 Supplement) provides:

> 'Professional employer agreement' means a written contract whereby: . . . (c) Employer responsibilities for worksite employees, including those of hiring, firing and disciplining, are expressly allocated by and between the professional employer organization and the client in the agreement; and (d) The professional employer organization expressly assumes the rights and responsibilities as required in section nine hundred twenty-two of this article.

New York Law □ 922(1) (McKinney 2005 Supplement) provides:

> A professional employer organization shall meet the following standards (a) Have a written professional employer agreement between the client and the professional employer organization setting forth the responsibilities and duties of each party. The professional employer agreement shall contain a description of the type of services to be rendered by the professional employer organization and the respective rights and obligations of the parties and the professional employer agreement shall also provide that the professional employer organization: (i) reserves a right of direction and control over the worksite employees. However, the client shall maintain such direction and control over the worksite employees as is necessary to conduct the client's business and without which the client would be unable to conduct its business, discharge any fiduciary responsibility which it may have, or comply with any applicable licensure; . . . .

New York Education Law □ 6524 (McKinney 2001 and 2005 Supplement) restricts licensure as a physician to individuals and New York Education Law □ 6522 (McKinney 2001) generally allows only licensed physicians to practice medicine. While in accordance with New York Business Corporation Law Article 15 (McKinney 2003 and 2005 Supplement) a PC may practice medicine through licensed physicians, there is no provision for a PEO to so practice.

While there is no prohibition in New York Labor Law Article 31 (McKinney 2005 Supplement) on a PEO leasing physicians, given the provisions of New York Labor Law □ 922(1)(a)(i), the Insurance Department will not, until an opinion on all relevant issues has been rendered by the New York Education Department, permit leased professionals to be considered employees of the lessee for the purposes of No-Fault reimbursement.

For further information you may contact Principal Attorney Alan Rachlin at the New York City Office.